# CHILICOTHE, (OHIO.)

The State
v.
Isaac Evans.

> Indictment under the act entitled "an an act to prohibit the issuing and circulating of unauthorized bank paper." Defendant was charged with passing an unauthorized bank note of the Owl Creek Bank of Mount Vernon.

Present.—*Thompson.* J.

Messrs. *Bond* and *Sill*, for the prosecution.
Messrs. *Breecher* and *Creighton*, for the Traverser.

*Bank bills not money, within the statute prohibiting the issuing of unauthorized bank paper.*

On the part of the traverser, it was contended, that the legislature, in the second section of the above act, in the following words, "that every company or association that *shall lend money*, and shall issue by their officer or officers, or by any person or persons, bonds, notes, or bills payable to bearer, or payable to order, and endorsed in blank, or use other shift or device, whereby the bonds, notes, or bills, given by such company or association, or on their behalf, pass or circulate by delivery, shall be taken and deemed a bank," by this act had so particularly described the institution what should be deemed a bank, that unless evidence sufficiently strong to prove the "Owl Creek" association to be of this nature had been adduced, the traverser must be acquitted; that no proof having been adduced to substantiate the fact of that association having lent money, i. e. specie, it was not a bank within this act. So particular is the description, that no allowance of what might have been the intention can be admitted—that the word *money*, as used in the act, as contradistinguished from bills, clearly shows what is the intention. If it had been intended only for associations that issue bills, the words *lend money* should have been left, for that is an essential requisite to constitute such a bank as this act would embrace : for an association that does *not loan money*, but issues bills, is not a bank within this act, the circulation of whose paper is prohibited.

2dly, The constitutional objection was raised that the legislature had not a right to interfere with contracts ; that they could pass no law impairing their obligation, and that they had no right to grant hereditary privileges of which it was endeavoured to be shown a bank is one ; that the granting of incorporations was a dangerous thing; that much was to be apprehended from their increase, and final monopoly of the interest of the state ; that the legislature had not a right to impair one man's credit by saying that his paper is not good, and its circulators shall be punished, and at the same time say to others, your paper is good, the world may take it.

On the part of the prosecution it was contended, that the word *money* thus used in the act was to be received in its most known and usual acceptation, i. e. the common currency of the country ; that the word as used in the statute books in bonds and in security, and in every instrument, meant the common currency of the country ; and that it should not now, by a peculiar fatality, be construed to mean *specie*, that the statute was meant to provide against an evil, and that it would completely be repealed, and its remedies not advanced, if the construction given by the counsel for the traverser was to be received ; that as to the constitutionality of the law, there will be no doubt, the restriction of the legislative powers over contract was admitted. But it was contended that it applied only in contracts executed or executory, but not to such as should be hereafter made. The legislature had an equal right to regulate the emission and circulation of spurious paper, as they have exercised over retailers of spirituous liquors, and in many other similar instances; and, in such fragrant cases, over institutions based on fraud, and supported by usury. To say they have no power, is neither policy nor law ; the power is weak enough to stop the growing curse, and courts of justice ought to advance, rather than hinder the advancement of the remedies.

The jury retired after receiving the charge of Judge Thompson, who declared the law constitutional, and thought that from the strictness which had been used in framing that law, and the precision in its penning, particularly in defining a bank within the meaning of the act.

The jury returned a sealed verdict, finding the facts

CHILICO-
THE,
(Ohio.)

The State.
v.
Evans.

of passing the money, and under the knowledge of its being unauthorized, and said, if the court think the bill money, we find the defendant guilty, if not money, not guilty.

After continuing the point under advisement several days, the court decided the *bill was not money*, and the defendant was acquitted.